**Richard J. GREEN, Plaintiff,**

v.

**The WESTCAP CORPORATION OF DELAWARE, a Delaware corporation, Defendant.**

Superior Court of Delaware,
New Castle County.
Submitted March 12, 1985.
Decided April 12, 1985.

Roger A. Brown, of J.R. Julian, P.A., Wilmington, for plaintiff.

Lewis S. Black, Jr., and Kenneth J. Nachbar, of Morris, Nichols, Arsht & Tunnell, for defendant.

TAYLOR, Judge.

Plaintiff Richard J. Green [Green], who is a former Vice-President and Chief Financial Officer of defendant The Westcap Corporation of Delaware [Westcap], seeks indemnification of legal expenses which he incurred successfully defending criminal charges brought against him by the State of Texas. Green resides in Texas. Westcap is a Delaware corporation with its place of business in Texas.

Westcap has moved to dismiss this suit or in the alternative to stay further proceedings in this suit pending the outcome of civil litigation pending in Texas. The Texas litigation to which Westcap refers was brought by it in the United States District Court for the Southern District of Texas against Green and others. In its present form the Texas litigation alleges that Green defrauded Westcap in connection with its buy-out of O'Connor, who had served as President and Chief Executive Officer of Westcap, and that Green fraudulently prepared financial statements which misrepresented Westcap's financial position and which were presented to the Westcap Board of Directors and resulted in the approval of the O'Connor Buy-Out, and that Green was permitted to embezzle funds from Westcap as a payment for his participation in preparation of the false statements and cancellation of an audit. Two other Texas actions are also relied on by Westcap in support of this motion, (1) a suit by National Western Life Insurance Company against Green which also charged Green with fraudulent and misleading financial statements which induced it to enter into transactions with Westcap, and (2) a suit by Capital Bank, N.A., against Green which also charged Green with fraudulent and misleading financial statements which induced a loan from its predecessor.

Westcap contends that issues which are essential to this suit are involved in the Texas suits and that this suit should at least be stayed pending resolution of the Texas suits which have been ongoing for two years.

I

This suit seeks to obtain indemnification under 8 *Del.C.* § 145(c). That subsection provides:

> (c) To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

It is undisputed that the criminal charges in the United States District Court for the Southern District of Texas focused on the actions of Green and Osborne [1] in obtaining a loan for Westcap which Westcap used to finance Westcap's buy-out of O'Connor. The indictment charged that Green and Osborne used false financial statements concerning Westcap's financial condition in obtaining the loan. The criminal trial culminated in the entry by the Court of judgment of acquittal of Green and Osborne as to all counts of the indictment.

Westcap contends that the acquittal of Green of the criminal charges does not satisfy the objective of § 145 of upholding the honesty and integrity of directors, citing *Hibbert v. Hollywood Park, Inc.*, Del. Supr., 457 A.2d 339, 343 (1983) and *Galdi v. Berg*, D.Del., 359 F.Supp. 698 (1973). It cannot be disputed that § 145 had as its

---

**1.** President of Westcap while Green was Vice President.

objective that capable persons would be more willing to serve as corporate officers and directors by being provided with indemnification for their expenses in defending against attacks upon their conduct as corporate officers and directors. However, neither *Hibbert* nor *Galdi* is of assistance in determining whether Green is entitled to the indemnification sought here. *Hibbert* upheld the power of the corporation to indemnify directors for expenses incurred in a proxy contest including litigation related to that proxy contest involving corporate policy. *Galdi* dealt with indemnification for expenses in defending derivative suits which sought to recover for disappearance of tobacco inventory of a corporate subsidiary. Suits which were at least partially overlapping were brought in Federal Courts in Wisconsin and Delaware. The portion of the Delaware suit which overlapped the Wisconsin suit was dismissed without prejudice. *Galdi* refused indemnification based on the dismissal of the Delaware suit without prejudice because the Delaware dismissal merely permitted the issue to be litigated in another court and did not constitute "success on the merits or otherwise" as required by § 145(c).

Westcap cites *McLean v. Alexander,* D.Del., 449 F.Supp. 1251, 1267 (1978) as being the only case which addresses the question posed by Westcap's present motion. Westcap quotes an excerpt from footnote 51[2] of *McLean,* which appears in connection with the following sentence:

> Thus the principles emerge that no intentional wrongdoer may shift the entire responsibility for the injury he has caused to another defendant by indemnification 51 but all wrongdoers may properly share in the apportionment of damages via claims for contribution.

While that footnote mentions 8 *Del.C.* § 145, the *McLean* Court was considering a

claim by an accountant for indemnification or contribution from individuals who had sold stock of a closely held corporation to a purchaser. The purchaser, claiming that the sale was tainted by fraud, had reached a settlement with the sellers and had obtained judgment against the accountant who had prepared documents used in connection with the purchase. *McLean* did not involve a claim by an officer or director nor did it seek indemnification from a corporation. Hence, footnote 51 does not represent a judicial holding interpreting 8 *Del.C.* § 145. Furthermore, for reasons discussed hereafter in this opinion, its general language does not aid in interpreting § 145(c).

Two *Merritt-Chapman* decisions have considered the availability of indemnification after an officer's involvement in criminal proceedings.[3] *Merritt-Chapman I* held that indemnification was not permitted for defense of criminal charges of which the officer had been convicted even though the fraud aspect of one of the charges had been dropped. *Merritt-Chapman II* focused on a by-law provision for indemnification which was more liberal than § 145, and which permitted indemnification for defense expenses relating to charges which did not result in conviction or guilty or nolo contendere plea, and held that indemnification was permitted for defense of charges which ultimately were dropped, but denied indemnification as to a charge which culminated in a plea of nolo contendere. Westcap contends that these decisions are not dispositive of the issue raised here because they did not address the applicability of the requirements of subsections (a) and (b) to subsection (c). Both *Merritt-Chapman* decisions involved issues which could have evoked discussion of the requirements of subsection (a), but notwithstanding participation by attorneys who were knowledgeable and experienced in the field of corpo-

---

**2.** "However, there is no indication that the company must or should indemnify directors who participate in wrongdoing ... A finding or inference of wrongdoing by defendant has generally precluded indemnification under this section.

**3.** *Merritt-Chapman & Scott Corporation v. Wolfson,* Del.Super., 264 A.2d 358 (1970) [*Merritt-Chapman I* ], and *Merritt-Chapman & Scott Corporation v. Wolfson,* Del.Super., 321 A.2d 138 (1974) [*Merritt-Chapman II* ].

rate law those requirements were not thought to be a factor in determining the right to indemnification for defense of criminal charges which had been disposed of.

 Westcap's approach is that an officer or director is not entitled to indemnification unless he has proved absence of wrongdoing. A more accurate description of the objective of the indemnification provision is to assure that indemnification can or will be invoked by the corporation for its directors and officers who incur expenses in proving their honesty and integrity, cf. *Mooney v. Willeys-Overland Motors, Inc.*, 3d Cir., 204 F.2d 888, 898 (1953), unless they fail to meet minimum qualifications touching upon the concept of wrongdoing. A consideration in dealing with the disqualifying effect of wrongdoing is that in the context of indemnification it is confined to the issues of the specific matter for which indemnification is sought. Applying its own version of the "no wrongdoing" concept, each subsection of § 145 contains a test which must be met in order for the officer or director to be eligible for indemnification under that subsection. *Foulk, The Delaware General Corporation Law,* pp. 98–99.

Westcap contends that because of the reference in § 145(c) to subsections (a) and (b) the requirements of proof mentioned in subsections (a) and (b) also are requirements for recovery under subsection (c). Green disputes this position and contends that the only requirement of proof under subsection (c) is that mentioned in that subsection, namely, success on the merits or otherwise in the defense of the action.

Subsection (a) applies to a broad variety of proceedings other than suits by or on behalf of the corporation encompassing civil, criminal, administrative and investigative proceedings, whether threatened, pending or completed. In such cases, the corporation is empowered to indemnify any person who was or is a party or is threatened to become a party by reason of his having been a director, officer, employee or agent of the corporation. However, indemnification under this subsection is dependent on his having acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and in the case of a criminal proceeding he additionally must have had no reasonable cause to believe his conduct was unlawful. Under this subsection the corporation may indemnify if the above qualifications are met even if there has been conviction or plea of nolo contendere.

Subsection (b) permits a corporation to indemnify its director, officer, or employee involved in a suit brought by the corporation or in the right of the corporation to procure a judgment in its favor by reason of such relationship against reasonable attorney's fees and expenses in connection with the defense of such suit. As in the case of indemnification under subsection (a), indemnification under subsection (b) is dependent on his having acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation. There is an additional requirement where a person has been adjudged liable for negligence or misconduct in the performance of his duty to the corporation, namely, that in such case there must have been a finding by the Court of Chancery or the court which determined the director's, officer's or employee's liability that the person is fairly and reasonably entitled to indemnification.

It is noted that subsection (c) does refer to subsections (a) and (b). However, that reference in subsection (c) is in defining the type of "action, suit or proceeding" to which subsection (c) applies. Under subsection (a), the type of action is "any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation)"; and under subsection (b), it is "any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor". The portions of subsections (a) and (b) which

Westcap would read into subsection (c) do not define the "action, suit or proceeding" referred to in subsections (a) and (b). Instead, they relate to qualifications which must be met in order to obtain indemnification under those subsections.

■ In contrast to subsections (a) and (b), subsection (c) predicates recovery on indemnitee's success "on the merits or otherwise in defense of the proceeding". The distinction is understandable. Subsections (a) and (b) do not require a prior judicial determination of the validity of the indemnitee's position as to the proceeding for which indemnification is sought. Hence, in the absence of success on the merits of the defense, there is a requirement that specific factual prerequisites be established as a condition for indemnification. Subsection (c) applies only where there has been a prior proceeding in which the lack of merit of the attack upon the indemnitee has been established. In such case the director, officer, or employee is entitled to be indemnified for expenses incurred in resisting the criminal charge against him if the prior proceeding arose by reason of the fact that he is or was a director, officer, or employee of the corporation.

■ If, as Westcap contends, subsection (c) was intended to incorporate all of the requisites specified in subsections (a) and (b), subsection (c) would be unnecessary. 8 *Del.C.* § 145 is a substantial revision of the former indemnification provision, which appeared as § 122(10) of the former Delaware General Corporation Law, 8 *Del.C. (1953)* Ch. 1. The present Delaware General Corporation Law is the product of a committee of eminent Delaware lawyers. Folk, *The Delaware General Corporation Law,* p. xii. The portion of the revised corporation law which substantially rewrote an important subject such as director indemnification received careful attention. Arsht & Stapleton, Delaware's New General Corporation Law: Substantive Changes, 23 *The Business Lawyer,* pp. 75, 77–80 (1967). Hence, any insertion or omission was done deliberately. Moreover, it is apparent from the completeness of the wording that the philosophy was to overstate rather than understate. Thus, even though the requisites in § 145(a) and § 145(b) are similar, each subsection sets forth the requisites. Therefore, when considering the reference in subsection (c) to "any action, suit or proceeding referred to in subsections (a) and (b)" the conclusion is that the only portion of subsection (a) and (b) which is incorporated by reference is the portion which defines the type of action, suit or proceeding covered by each section and that that reference does not incorporate the subsequent qualification required for indemnification. The following quotation from the review of the 1967 Delaware General Corporation Law shows the objective of § 145(c):

In addition to defining the area in which a corporation is permitted to grant indemnity, the new statute adds a provision granting an absolute right of indemnity to any director, officer, employee or agent of the corporation who has been successful, on the merits or otherwise, in the defense of any proceeding, or any claim, issue or matter therein. Such person is entitled to recover his expenses, including attorneys' fees, actually and reasonably incurred by him in connection with that portion of his defense which was successful.[26] [Footnote 26 refers to § 145(c)].

23 *The Business Lawyer,* supra, at 80.

Westcap points out that the judge who directed judgment of acquittal in favor of Green noted that his finding Green not guilty of the criminal charge did not find him innocent and that he believed that he would be punished in the civil courts. Here, Green only seeks indemnification for his successful defense of the criminal charge. This suit goes no further than that criminal defense. It does not establish his right to indemnification for expense incurred in any other litigation. Under § 145 indemnification must be considered as each criminal or civil proceeding arises or is concluded. Presumably each will in-

volve its own expenses and each must meet the statutory qualifications applicable to it. Whether Green is or will be entitled to indemnification for the defense of the Texas civil litigation is, of course, not before the Court in this suit.

## II

■ The objective of Westcap's motion is the dismissal of this action or its stay until final disposition of proceedings in Texas. This is premised on the position that this suit would require or permit the same issues to be litigated here as those which are being litigated in Texas.

Green points out that while he and Westcap are parties to the Texas litigation there are other parties and issues not involved in this suit. Moreover, Green points out that there is no claim in the Texas litigation for indemnification for his expenses in defending the criminal charge or even a claim for declaratory judgment to disqualify him from indemnification for expenses in defending the Texas litigation.

This suit involves the relatively narrow issue of whether Green is entitled to be indemnified for reasonable expenses for successfully defending against the criminal charges. Since Westcap has not filed an answer in this suit the precise nature of the controverted issues has not been established. However, the parameter of the issues would be those issues which are relevant under this decision. The issues which Westcap cites as being common to this suit and the Texas litigation (namely, the requisites for recovery under § 145(a) and (b)) are matters which this decision has found not to be requisites for recovery under § 145(c).

Because of the dissimilarity of the issues and objectives of this suit and the Texas litigation, the analysis which is customary in deciding forum non conveniens matters is not required here.

Accordingly, Westcap's motion to dismiss or to stay is denied.

IT IS SO ORDERED.